United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

        Plaintiff(s),

   v.

AT&T WESTERN DISABILITY BENEFITS PROGRAM,

        Defendant(s).
_____/

No. C-11-4603 DMR

**ORDER RE PARTIES JOINT DISCOVERY LETTER OF APRIL 13, 2012**

      The court is in receipt of the parties' joint discovery letter of April 13, 2012 [Docket No. 34], which sets forth their disputes concerning Plaintiff's Interrogatories to Defendant (Set Three) Nos. 32-37 and Plaintiff's Requests for Production of Documents (Set Three) Nos. 3, 5, 13-16, 26-32. The parties' disagreements largely turn on whether Defendant's discovery responses must include information obtained from third-party Sedgwick Claims Management, Inc. ("Sedgwick"), as well as Sedgwick's subcontractor, NMR. Specifically, the disputes require the court to decide (1) whether Plaintiff's interrogatories seek information "readily obtainable" by Defendant and (2) whether Defendant has "possession, custody, or control" over the documents that Plaintiff desires. Defendant also challenges the requests as exceeding the scope of permitted discovery in this ERISA appeal of the denial of Plaintiff's disability benefits. The court held a hearing on May 10, 2012. This order summarizes the court's rulings.

**I. Background**

Plaintiff, a former employee of AT&T, Inc., brings suit pursuant to 29 U.S.C. § 1132(a)(1)(B) to challenge Defendant AT&T Umbrella Benefit Plan No. 1's termination of his short-term disability benefits under the AT&T Western Disability Benefits Program. (Am. Compl. ¶¶ 2-3.) The evidence a court may consider when evaluating a benefits denial claim depends on the standard of review applied. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006) (en banc). Courts review a denial of health benefits challenged under § 1132(a)(1)(B) *de novo* unless the plan grants "the [plan] administrator . . . discretionary authority to determine eligibility for benefits" or to construe the terms of the plan. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (1989) (citations and quotation marks omitted) (emphasis removed); *accord Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants such discretion, the court will examine the denial for an abuse of discretion. *Metro. Life Ins. Co.*, 554 U.S. at 111; *Firestone Tire & Rubber Co.*, 489 U.S. at 115; *Abatie*, 458 F.3d at 963. The court has not decided the applicable standard of review in this case. For the purposes of this discovery dispute, the court assumes that the abuse of discretion standard governs.

When evaluating the merits under an abuse of discretion standard, a plaintiff may receive limited discovery to unearth the existence of possible conflicts of interest under which the defendant may operate or of procedural errors that may have undermined the fairness of the plaintiff's hearing. *See Metro. Life Ins. Co.*, 554 U.S. at 108 (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 115); *see Abatie*, 458 F.3d at 967, 972-73. The Ninth Circuit has specifically noted that the relevance of any conflict of interest increases when accompanied by certain indicia of potential unfairness, including, for example:

> any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie*, 458 F.3d at 968-69 (internal citations omitted). Conversely, a conflict plays a lesser role "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for

example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Metro. Life Ins. Co.*, 554 U.S. at 117 (citation omitted); *accord Abatie*, 458 F.3d at 968.

## II. Applicable Law Governing Discovery

### A. Discovery Under Rules 33 and 34 of the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 33 mandates that a party respond to interrogatories with "the information available" to it. Fed. R. Civ. P. 33(b)(1)(B). In the context of corporations, this rule "requires that [the] corporation furnish such information as is available from the corporation itself or from sources under its control.'" *In re NCAA Student-Athlete Name & Likeness Litig.*, No. 09-1967 CW (NC), 2012 WL 161240, at *5 (N.D. Cal. Jan. 17, 2012) (quoting *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005)). Thus, a corporation must respond to an interrogatory seeking information available from a non-party if the information is "readily obtainable" from that entity. *Id.*

Rule 34 obligates a party to produce relevant, non-privileged documents in its "possession, custody,[1] or control." Fed. R. Civ. P. 34(a)(1). The Ninth Circuit defines "control" over documents as "the legal right to obtain [them] upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citation and quotation marks omitted). For example, if a contract between two separate legal entities "expressly give[s]" one entity "the right to obtain" the documents of the other, the first entity has control over the latter's documents. *See id.* (citing *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452-53 (9th Cir. 1989)). The party seeking the documents bears the burden of demonstrating that the responding party exercises such control. *In re NCAA Student-Athlete Name & Likeness Litig.*, 2012 WL 161240, at *2 (citing *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1542). "[P]roof of 'theoretical control is insufficient; a showing of actual control is required.'" *Id.* (quoting *In re Citric Acid Litig.*, 191 F.3d at 1107). A showing that a party has the "practical ability" to obtain the requested documents does

---

[1] Defendant represents that it already has produced responsive documents regarding Sedgwick and NMR to the extent such information is in Defendant's possession or custody. The sole question presented in this motion is whether Defendant must produce Sedgwick and NMR documents that Defendant does not possess, but may be in its "control."

not meet this standard because, for example, "the other entity 'could legally–and without breaching any contract–continue to refuse to turn over such documents.'" *Id.* at *3 (quoting *In re Citric Acid Litig.*, 191 F.3d at 1108).[2]

**B. The Contract Between Defendant and Sedgwick**

In conjunction with the Rules and case law governing discovery, the Agreement for Administration of Disability Claims Under SBC Disability Plans and Administration of SBC's Job Accommodation Process ("Contract") between Defendant and Sedgwick Claims Management Service, Inc. ("Sedgwick") grants "control" to Defendant of much of the information and many of the documents that Plaintiff seeks. Section 3.15 grants Defendant extensive ownership rights over information and documents created during the claims administration process:

> *Any information furnished to [Sedgwick]* (whether by [Defendant], by a Claimant, or by the treating physician of a Claimant) in connection with this Agreement . . . shall remain *[Defendant]'s property. . . . All copies of such information*, in written, graphic or other tangible form, *shall be returned to [Defendant] upon . . . [Defendant]'s request*.

(Contract § 3.15 (emphasis added).) "Any information" and documents "furnished to [Sedgwick]," whether by Defendant, a claimant, or a claimant's treating physician, "in connection with" the Contract therefore fall within the scope of Defendant's discovery obligations.

The Contract moreover provides Plaintiff with broad access to Sedgwick's and its subcontractors'[3] information in the context of records, inspections, and audits. Section 3.28.3 states that Sedgwick

---

[2] It is possible that the domain of "readily obtainable" information under Rule 33 may be broader than the realm of documents over which a party has "control" pursuant to Rule 34. As already mentioned, the Court of Appeals, unlike some of its sister circuits, has ruled that the "practical ability" to obtain documents does not constitute "control" over them for Rule 34 purposes. *Compare In re NCAA Student-Athlete Name & Likeness Litig.*, 2012 WL 161240, at *2, *with Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). However, the Ninth Circuit has not yet indicated whether information within documents which a party had the "practical ability" to access might fall within Rule 33's "readily obtainable" standard. Because in this instance the court finds that Defendant has "control," as defined in Rule 34, over the information that Plaintiff requests in its interrogatories, the court need not address this potential asymmetry.

[3] NMR, an independent medical review organization retained by Sedgwick to provide physician advisors to review medical records and provide Sedgwick with medical opinions (*see* Disc. Ltr. at 3), is one such subcontractor.

4

>   agrees that [Defendant] shall have the right to conduct . . . full and comprehensive inspections or audits of [Sedgwick], and *any of [Sedgwick]'s subcontractors or suppliers* for the services used in the performances of Services hereunder. [Defendant]'s audit rights shall extend to the areas described in paragraph 3.27.4 [sic] below and shall apply regardless of whether the applicable aspect of Service to be audited is performed by [Sedgwick] or *by any of [Sedgwick]'s subcontractors or suppliers.*

(Contract § 3.28.3 (emphasis added).) The following subsection then non-exclusively defines a wide range of audit subject areas encompassed by § 3.28.3, noting that Defendant reserves the right to audit the following:

>   1) [Sedgwick]'s administration of the provisions and compliance with ERISA; 2) all aspects of [Sedgwick]'s claims processing and payment procedures as they related to [Defendant]'s Program, including but not limited to the details of plain provisions and online tools defining benefit used in administering claims (this may include an audit of the claims journey from the date that [Sedgwick] renders a claim payment to the participant, facility, or provider); 3) handling of inquires and provision of information concerning the Plan, [sic] 4) [Sedgwick]'s loading, quality checks, updating, and use of eligibility data; 5) billing or other transactional detail [sic]; 6) [Sedgwick]'s tracking and calculation of other performance measurements, and any systems used in conjunction therewith; 7) [Sedgwick]'s handling of Claimant appeals: receipt, processing, investigation, and response; 8) [Sedgwick]'s implementation and/or transition activities; 9) [Sedgwick]'s database records; 10) performance monitoring of [Sedgwick] or *its subcontractors*, [sic] 11) [Sedgwick]'s quality assurance program; 12) fees or other charges invoiced by, or paid to, [Sedgwick]; 13) any other aspect relevant to [Sedgwick]'s performance of Services, including, but not limited to, administration of [Defendant]'s job accommodations process.

(Contract § 3.28.4 (emphasis added).) Moreover, subsection 3.28.5 contractually secures Defendant's right to access Sedgwick's and its subcontractors' records to perform inspections or audits:

>   Should [Defendant] request an audit on [Sedgwick]'s premises, *the premises of [Sedgwick]'s subcontractors, or otherwise*, [Sedgwick], *or its subcontractor*, shall make available all pertinent records, data, information, and files to [Defendant] . . . . [Defendant] shall provide at least thirty (30) days advance notice in writing when it desires to perform an audit under this Agreement.

(Contract § 3.28.5 (emphasis added).) Defendant's legal right to demand that Sedgwick or any of Sedgwick's contractors grant it access to any documents or data related to sections 3.28.3 and 3.28.4 of the Contract places the documents and data, and the information within them, within Defendant's control. *See Rosie v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (holding that party's contractual right to examine and copy other entity's data "upon reasonable notice" placed data

within party's control). The documents and information that fall within these inspection and audit provisions therefore fall within the ambit of Defendant's discovery duties under Rules 33 and 34.

Finally, Attachment A to the Contract establishes duties that Sedgwick must perform for Defendant in case of litigation. Sedgwick must

> [a]ssist [Defendant]'s counsel, if requested, in preparing the defense of litigated cases arising out of Disability Claims . . . . [Sedgwick] shall discuss case history with such attorney, provide a copy of the file to such attorney, and explain the way in which the Plan at issue works and [Defendant]'s Plans, policies, and procedures to such attorney. [Sedgwick] shall appear and testify in court as a subject matter expert witness on [Defendant]'s Plans, policies, and procedures if requested by [Defendant] or its attorney . . . .

(Contract Attach A § 1(A)(6).) This provision establishes an additional contractual obligation pursuant to which Defendant controls documents and information about Plaintiff's benefit claim and the Plan's operations that are responsive to Plaintiff's discovery requests.

### III. Discussion

In light of the foregoing, the court rules as follows. Interrogatories 32-35 seek the total numbers of claims and appeals in 2009 and 2010 for which NMR or other entities provided medical review services, as well as the total numbers among these that resulted in NMR approving and denying disability claims and appeals. (Disc. Ltr. Attach. 1 at 10.) The court finds this information relevant, *see Abatie*, 458 F.3d at 968-69 (holding that parsimonious claims granting history may indicate presence of conflict of interest), and discoverable under the Contract audit provisions, as those provisions make the information readily obtainable by Defendant. *See Rosie*, 256 F. Supp. 2d at 119. However, the court narrows the scope of the interrogatories to claims related to the AT&T West Disability Program. With respect to Interrogatories 36 and 37, which request the total amount of money paid to Sedgwick and NMR in 2009 and 2010 for provision of services relating to the Plan's administration (Disc. Ltr. Attach. 1 at 10-11), the court finds the information relevant, *see Burrows v. AT&T Umbrella Benefit Plan No. 1*, No. 10-1375 BZ, 2011 WL 996748, at *2 (N.D. Cal. Mar. 21, 2011) (noting that economic interests in claim processing may indicate conflict of interest), and readily obtainable under the Contact audit provisions. However, the court narrows the scope of these interrogatories to claims related to the AT&T West Disability Program.

1    Turning to Plaintiff's Requests for Production ("RFPs"), the court finds the documents in
2 RFPs 3, 5 and 13 to be relevant, as they seek documents relating to Plaintiff's claim or appeal
3 received or created by Defendant, Sedgwick, or NMR (Disc. Ltr. Attach. 2 at 11-12).  *See Metro.*
4 *Life Ins. Co.*, 554 U.S. at 108; *Abatie*, 458 F.3d at 968-69; *Zewdu*, 264 F.R.D. at 627-28.  Such
5 documents are also under Defendant's control pursuant to the Contract audit provisions.  The court
6 thus orders Defendant to respond to them in full.  RFPs 14-16 demand all documents concerning
7 various financial transactions between Defendant, Sedgwick, and NMR for services provided.
8 (Disc. Ltr. Attach. 2 at 11-12.)  These RFPs are overly broad and burdensome as well as partially
9 duplicative of other propounded discovery, and the court therefore orders that no further responses
10 are necessary.  *See* Fed. R. Civ. P. 26(b)(2)(C).  RFPs 26-29 request various documents, such as
11 contracts or memoranda of understanding, that describe the relationship between Defendant,
12 Sedgwick, and NMR; policies and procedures for selecting medical reviews, and NMR's
13 advertising, operations, policies, procedures, and fee schedules.  These are relevant, *see Metro. Life*
14 *Ins. Co.*, 554 U.S. at 108, and subject to Defendant's control under the Contract audit provisions.
15 However, the court limits the scope of production to those documents related to the AT&T West
16 Disability Program, and falling within the 2009-2010 time period.    RFP 30 is overbroad and
17 somewhat vague (*see* Disc. Ltr. Attach. 2 at 15); Defendant need only respond to it by producing
18 internal audits of NMR services regarding claims or appeals made for the AT&T West Disability
19 Program during the relevant time period.  Finally, the court orders that no further response is
20 required for RFPs 31-32; they are overly broad, burdensome and duplicative, as they demand
21 voluminous financial documents detailing financial payments made to NMR during the relevant time
22 period (Disc. Ltr. Attach. 2 at 15). *See* Fed. R. Civ. P. 26(b)(2)(C).
23    IT IS SO ORDERED.

25 Dated: May 14, 2012

DONNA M. RYU
United States Magistrate Judge

